# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11177 (KBO)<br><br>(Jointly Administered) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, *et al.*<br><br>Plaintiff,<br><br>vs.<br><br>MCKESSON CORPORATION, MCKESSON SPECIALTY CARE DISTRIBUTION LLC, MCKESSON MEDICAL-SURGICAL, INC.<br><br>Defendants. | Adv. Proc. No. 24-50042 (KBO)<br><br>Related Adv. D.I. 19, 20, 28 |

## MCKESSON CORPORATION'S REPLY TO PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendants McKesson Corporation, McKesson Specialty Care Distribution LLC, and McKesson Medical-Surgical, Inc. ("McKesson") hereby reply to the *Answering Brief in Opposition to Defendants' Motion to Dismiss* (the "Opposition") filed by plaintiff George L. Miller ("Trustee"), Chapter 7 Trustee for the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC ("Debtors").

/ / /

/ / /

/ / /

/ / /

1

## TABLE OF CONTENTS

            **Page**

INTRODUCTION ..................................................................................................................6

ARGUMENT .........................................................................................................................8

    A.    Trustee's Failure to Plead a § 542(b) Claim for Relief Cannot Be Cured by the Opposition. ..................................................................................................8

    B.    The Complaint Does Not State a Claim for Relief Because It Does Not Allege that the Debts Are Matured or Otherwise Payable on Demand or Order. ..................................................................................................9

    C.    Setoff in the Context of §542(b) is Not an Affirmative Defense. ..........................11

    D.    McKesson Has Not Impliedly Consented to the Court's Entry of Final Judgments or Orders and, In any Event, This Issue Is Not Before the Court. ........14

CONCLUSION.....................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004) ................................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................6

*In re Best Refrigerated Express, Inc.*,
  132 B.R. 420 (Bankr. D. Neb. 1991) ..................................................................................11

*Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*,
  2008 WL 4239120 (Bankr. D. Del. Sept. 16, 2008) ...........................................................12

*Butner v. United States*,
  440 U.S. 48 (1979) ...............................................................................................................9

*Calhoun v. Copeland Corp. (In re Gordons Transps. Inc.)*,
  51 B.R. 633 (Bankr. W.D. Tenn. 1985) ..............................................................................11

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1984) ....................................9

*Enron Energy Services, Inc. v. Columbia Gas Trans. Corp. (In re Enron Corp.)*,
  2006 WL 2400082 (Bankr. S.D.N.Y. June 15, 2006) ...................................................12, 13

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*,
  209 F.3d 252 (3d Cir. 2000) ...............................................................................................12

*Gavin Solmonese, LLC v. True Line Wire (In re Boomerang Sys., Inc.)*,
  2017 WL 4221095 (Bankr. D. Del. Sept. 21, 2017) ...........................................................11

*Goldsmith v. Macri Assoc., Inc. (In re E & G Waterworks, LLC)*,
  571 B.R. 500 (Bankr. D. Mass. 2017) ..........................................................................12, 13

*Harchar v. United States (In re Harchar)*,
  393 B.R. 160 (Bankr. N.D. Ohio 2008) ............................................................................8, 9

*HHI FormTech, LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC)*,
  439 B.R. 352 (Bankr. D. Del. 2010) ...................................................................................12

BN 83285935v1

*Insys Liquidation Trust v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics, Inc.)*,
  2021 WL 5016127, at *3 (Bankr. D. Del. Oct. 28, 2021) ........................................................11

*Miller v. D&M Holdings US Inc. (In re Digital Networks North America, Inc.)*,
  2018 WL 3869599 (Bankr. D. Del. Aug. 13, 2018) ................................................................11

*In re Total Transp.*,
  87 B.R. 568 (Bankr. D. Minn. 1988) .......................................................................................11

*Pa. ex rel. Zimmerman v. Pepsico, Inc.*,
  836 F.2d 173 (3d Cir. 1988) ......................................................................................................9

**Statutes**

11 U.S.C. § 542 ................................................................................................................................6, 8

11 U.S.C. § 542(a) ........................................................................................................................6, 8, 9

11 U.S.C. § 542(b) ...................................................................................................................... *passim*

11 U.S.C. § 547(c) .............................................................................................................................12

11 U.S.C. § 553 .............................................................................................................................7, 13

6 Del. Code § 2-314 ........................................................................................................................7, 9

Fed. R. Bank. P. 7012 ........................................................................................................................14

Fed. R. Bank. P. 7012(b) ...................................................................................................................14

Fed. R. Civ. P. 7(a) ..............................................................................................................................9

Fed. R. Civ. P. 12(b) ..........................................................................................................................14

Fed. R. Civ. P. 12(b)(6) .....................................................................................................................11

L. R. 7012-1 .......................................................................................................................................14

U.C.C. Art. 2 .......................................................................................................................................7

U.C.C. § 2-314 ................................................................................................................................6, 9

U.C.C. § 2-314(2)(c) ...........................................................................................................................7

Va. Code § 8.2-314 .........................................................................................................................7, 9

BN 83285935v1

**Other Authorities**
https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/update-akorn-issues-voluntary-nationwide-recall-various-human-and-animal-drug-products-within-expiry ................................................................................................. 6

https://www.law.cornell.edu/wex/merchantable ............................................................. 7

BN 83285935v1

**INTRODUCTION**

1.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009). Defendants' position is simple: it is not plausible on its face that the Trustee is entitled to turnover of $104,434,673.14, where, as here, it is an undisputed judicially noticeable fact that a significant portion of the pharmaceutical products that Debtors sold to McKesson could not be re-sold by McKesson due to Debtors' recall of those products. Pursuant to Debtors' recall notice, the Trustee instructed McKesson (and all other wholesalers and other parties) to cease "distribution or use of" all product inventory immediately – https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/update-akorn-issues-voluntary-nationwide-recall-various-human-and-animal-drug-products-within-expiry.

2.  The Trustee cannot deny that McKesson is not contractually obliged to pay for products that were recalled, nor can the Trustee deny that McKesson suffered damages as a result of the recall of the products.

3.  Count V of the Complaint for Turnover is a mere seven paragraphs and does not even cite the basic elements of a claim for turnover under § 542(b).[1] The Complaint fails to state a claim for relief for turnover pursuant to § 542(b) because it does not allege that the debts allegedly owed by McKesson are "matured, payable on demand, or payable on order," as required by the statute.

4.  Here, the debt at issue has not matured because the Debtors failed to fully perform under the relevant Agreements by failing to deliver merchantable products. Pursuant to Section

---

[1] Section 542(a), which is the only subsection of § 542 that the Trustee references in the Complaint, does not apply, as § 542(a) only applies to tangible property, not debts owed (*see infra*).

BN 83285935v1

2-314 of the Uniform Commercial Code,[2] all sales of goods contain an implied warranty of merchantability that the subject goods are marketable and sellable.[3] Obviously, recalled products are neither marketable nor sellable. Thus, with respect to the products subject to recall, the Trustee has failed to allege a matured debt.

5. The Trustee correctly acknowledges a debt is not mature where there is a *bona fide* dispute over liability on the debt. (Opposition at ¶ 18). The Trustee attempts to argue around the *bona fide* dispute rule by contending the subject dispute is nothing more than an affirmative defense for which McKesson has the burden of proof and thus, according to Trustee's argument, cannot be used as a basis for a motion to dismiss. The Trustee is wrong, for two reasons.

6. First, it is the Trustee's burden in the first instance to plead that it has fully performed under the Parties' Agreements, which the Trustee cannot do due to the failure to deliver merchantable products.

7. Second, setoff is not an affirmative defense here. Section 542(b) expressly excuses the obligation to pay to the Trustee any matured debt that is property of the estate "to the extent that such debt may be offset under section 553 of this title against a claim against the debtor." Notably, many of the cases that Trustee cites do not concern § 542(b) claims and are thus distinguishable. Indeed, the Trustee's Opposition largely consists of endless string cites, many of which are irrelevant. Worse yet, at times, the Trustee misstates the holding of cited cases, excerpting favorable language while strategically leaving out important qualifying language and facts.

---

[2] The Trustee contends that Delaware and Virginia law are applicable. Both Delaware and Virginia have adopted Article 2 of the Uniform Commercial Code. *See* 6 Del. Code § 2-314; Va. Code §8.2-314.

[3] To be "merchantable," the goods must, among other things, be "fit for the ordinary purposes for which such goods are used . . . ." UCC § 2-314(2)(c). "Merchantable" is equivalent to "marketable" or "sellable." https://www.law.cornell.edu/wex/merchantable.

8. Lastly, the Trustee's lengthy retort to a brief footnote in McKesson's Motion regarding this Court's authority to enter a final order or judgment is overblown and unwarranted at this stage. McKesson does not "eschew the Court's jurisdiction," (Opposition at ¶ 30) nor does McKesson "object" to the Court's jurisdiction (*Id.* at ¶ 31). Rather, McKesson simply and clearly states in the Motion that it "does not consent to entry of final orders or judgment by the Court in this Adversary Proceeding." (Motion at fn. 1).

9. As the Court certainly appreciates, the analysis here is more nuanced than the Trustee represents to the Court. Whether McKesson has consented to this Court's entry of final orders or judgment in this adversary proceeding is a factual inquiry. Under the circumstances presented here, in which McKesson has yet to answer the Complaint, and its proofs of claim filed in the main case were defensive in nature, the Court should not deem McKesson as having impliedly waived consent. In any event, this issue is not before the Court at this time, and the Court need not decide it in the context of a motion to dismiss.

## ARGUMENT

**A.  Trustee's Failure to Plead a § 542(b) Claim for Relief Cannot Be Cured by the Opposition.**

10. As McKesson states in its Motion, "The Trustee's complaint is unclear which provision of Section 542 it is basing its turnover claim." (Motion at fn. 4). The Trustee does cite § 542(a) at ¶ 63 of the Complaint, which only applies to tangible property. "Where a debt (as opposed to a tangible item of property) is owed to a debtor that is property of the estate [] § 542(b), not § 542(a), applies." *Harchar v. United States (In re Harchar)*, 393 B.R. 160, 172 (Bankr. N.D. Ohio 2008). Therefore, the Complaint, as written, is deficient.

11. The Trustee apparently attempts to remedy this defect in his Opposition by citing § 542(b) at length. However, the Trustee cannot use the Opposition to attempt to cure defects in

8

the Complaint. The Court may not take into account additional facts asserted in a memorandum opposing a motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a). "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1984).

12. Here, the "four corners" of the Complaint do not state a claim for relief under § 542(b). The Complaint does not even bother to cite § 542(b), nor the elements necessary for a turnover claim for relief. As set forth below, the Complaint does not state a claim for relief because it does not allege that the debts owed are tangible property. Thus, Count V of the Complaint should be dismissed.

**B.     The Complaint Does Not State a Claim for Relief Because It Does Not Allege that the Debts Are Matured or Otherwise Payable on Demand or Order.**

13. Section § 542(b), unlike § 542(a), has a temporal limitation: it only becomes effective when the debt is matured or otherwise payable on demand or order. Until this event occurs, there can exist no duty of turnover. *Harchar*, 393 B.R. at 173. As with other interests in property, the determination of when a debt is matured or otherwise payable on demand or order is made in accordance with applicable non-bankruptcy law. *Id.* citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979) (whether a party has an interest in property and the extent of that interest is determined by applicable nonbankruptcy law).

14. The relevant Agreements are governed by Delaware law and Virginia law. (Complaint at ¶ 18). Delaware and Virginia have both adopted the UCC, including the UCC's implied warranty of merchantability. See 6 Del. Code § 2-314 and Va. Code. § 8.2-314. Section

2-314 of the UCC provides that goods sold must be "merchantable" and be "fit for the ordinary purposes for which goods are used":

> Implied warranty; merchantability; usage of trade.
>
> (1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as
>
>     (a) pass without objection in the trade under the contract description; and
>
>     (b) in the case of fungible goods, are of fair average quality within the description; and
>
>     (c) are fit for the ordinary purposes for which such goods are used; and
>
>     (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
>     (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
>     (f) conform to the promises or affirmations of fact made on the container or label if any.

15. In the present case, there can be no legitimate dispute that (a) Debtors failed to fully perform under the relevant agreements by delivering unmerchantable products, and (b) a bona fide dispute exists with respect to the amount of monies owed to Debtors, and that it is nowhere near $104,434,673. The parties' agreements expressly reference that McKesson was purchasing products from Debtors for resale. (See, e.g., Exhibit A-1 to Complaint at p. 2.) Given the Debtors' recall, Debtors failed to fully perform under the relevant agreements by delivering unmerchantable products. As such, the debt associated with the recalled product is not mature, and the Complaint fails to state a turnover claim upon which relief can be granted.

16. A debt is not mature for purposes of § 542(b) where the contract is not fully performed and there are claims of improper contract performance. "The debt owed by Copeland to [debtor] was 'matured' because the duties under the contract were fully performed and Copeland makes no claim of incomplete or improper delivering of the commodities." *In re Total Transp.*, 87 B.R. 568, 574 (Bankr. D. Minn. 1988) (quoting C*alhoun v. Copeland Corp. (In re Gordons Transps. Inc.)*, 51 B.R. 633, 636 (Bankr. W.D. Tenn. 1985)). *See also In re Best Refrigerated Express, Inc.*, 132 B.R. 420, 421 (Bankr. D. Neb. 1991) ("The debts owed by the defendants to the debtor were matured because the duties under the contract between the parties were fully performed and there are no claims of incomplete or improper performance.")

17. The unpublished case that the Trustee cites, *Miller v. D&M Holdings US Inc. (In re Digital Networks North America, Inc.)*, 2018 WL 3869599 (Bankr. D. Del. Aug. 13, 2018), is not to the contrary. The Trustee highlights that case because the court there denied a motion to dismiss despite that the defendants "strongly opposed the validity of the Receivable." But the nature of the dispute in *Digital Networks* is at best unclear, as the opinion only explains that the creditor "argues that the Trustee wavers over the value on the face of the Complaint." *Id.* at *6. And, the court carefully qualified its ruling based on the limited facts available: "Much like the Trustee at this stage, the Court is operating with a dearth of information. However, *as presented*, there is not a bona fide dispute as to the Receivable." *Id.* (emphasis added). In sharp contrast, in the present case, it is evident from judicially noticeable facts that the Debtors failed to fully perform under the relevant agreements.

C. **Setoff in the Context of §542(b) is Not an Affirmative Defense.**

18. In his Opposition, the Trustee cites a myriad of cases for the general propositions that (i) an affirmative defense cannot be used to dismiss a complaint under Rule 12(b)(6); and (ii) offset is an affirmative defense. The first several cases cited are not turnover cases under

11

§ 542(b), and are inapplicable. *Insys Liquidation Trust v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics, Inc.)*, 2021 WL 5016127, at *3 (Bankr. D. Del. Oct. 28, 2021), *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004); *Gavin Solmonese, LLC v. True Line Wire (In re Boomerang Sys., Inc.)*, 2017 WL 4221095, at *2 (Bankr. D. Del. Sept. 21, 2017). *Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*, 2008 WL 4239120, at *3 (Bankr. D. Del. Sept. 16, 2008) all pertain to preference actions and not § 542(b) turnover actions. These cases discussed the statutory affirmative defenses set forth in § 547(c). *HHI FormTech, LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC)*, 439 B.R. 352, 361 (Bankr. D. Del. 2010) (quoting *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 256 (3d Cir. 2000) likewise are not turnover cases.

19. The only cases that the Trustee cites that are turnover cases are *Goldsmith v. Macri Assoc., Inc. (In re E & G Waterworks, LLC)*, 571 B.R. 500, 507 (Bankr. D. Mass. 2017) (hereinafter "*Waterworks*") and *Enron Energy Services, Inc. v. Columbia Gas Trans. Corp. (In re Enron Corp.)*, 2006 WL 2400082, at *7 (Bankr. S.D.N.Y. June 15, 2006) (hereinafter "*Enron*"). Both are distinguishable.

20. With respect to the *Waterworks* case, the Trustee quotes only the portions of the case that appear to favor his position, while omitting important qualifying language. Notably, the *Waterworks* case dealt with a motion to compel arbitration, not a motion to dismiss. To that end, the *Waterworks* court held that arbitration would inherently conflict with the Trustee's right to demand turnover, pursuant to § 542(b), of the matured debt owed to the Debtor by Macri. *Waterworks*, 571 B.R. at 509. In its analysis, the *Waterworks* court explained

> Some courts, however, have held that a § 542(b) turnover proceeding **is not core '[w]hen a bona fide dispute exists as to liability involving state law**.' [citations omitted]. Here, Macri raises the specter of a dispute by generally denying liability. The only substantive reply to the Trustee's turnover action, however, is

12

> found in its affirmative defenses, where Macri says that the Debtor breached the contract by failing to provide an extended warranty.

*Id.* at 507 (emphasis added). As a result, "The Court concludes, however, that this defense does not give rise to a bona fide dispute as to liability **such that this action should be considered non-core**." In his Opposition, the Trustee omits the bolded language, which significantly changes the meaning of the sentence. (Opposition at ¶24, p. 12). The *Waterworks* court further explained why the particular facts of the case did not give rise to a bona fide dispute:

> First, there is no allegation that the parties were involved in prepetition negotiations or discussions, to say nothing of litigation, in which Macri was contesting the existence or scope of its liability to the Debtor. In fact, this warranty argument is unsupported by the record and, in some instances, contradicted by the documents provided to the Court. … Given these specific circumstances, the Court simply cannot view this particular debt as the subject of a bona fide dispute.

*Id.* at 507-08. In other words, the court in *Waterworks* found that there was no bona fide dispute based on the facts of the case, *i.e.* because the defendant's argument was unsupported by the record, and contradicted by documents provided to the court.

21. Likewise, the facts are distinguishable from those in *Enron*. In *Enron*, the plaintiff contended that "[defendant's] bald denial that it owes the debts at issue does not mean that the debts are disputed for purposes of section 542(b) because applicable case law mandates the dispute be legitimate to defeat use of section 542(b)." *Enron* at 2006 WL 2400082, at *2. Here, the Trustee does not dispute that there is a bona fide dispute as to the amount of the debt the McKesson owes. Here, the Trustee has never alleged that McKesson's claims resulting from the recall are not "legitimate." There is no allegation that McKesson has made a "bald denial that it owes the debts at issue." McKesson's denial of liability here is specific and clear. In sum, the holdings of *Waterworks* and *Enron* do not apply.

22.     In a footnote, the Trustee further argues that setoff under § 553 does not apply, as "[o]nly prepetition claims owed by a debtor may be setoff against prepetition amounts owed to the debtor." (Opposition at fn. 4). As explained above, the Debtors' breach of contract arose from the Debtors' delivery of non-merchantable products. Thus, both alleged breaches occurred prepetition, and setoff does apply.

**D.    McKesson Has Not Impliedly Consented to the Court's Entry of Final Judgments or Orders, and, In Any Event, This Issue Is Not Before the Court.**

23.     In response to McKesson's footnote stating "McKesson states that it does not consent to entry of final orders or judgment by the Court in this Adversary Proceeding," the Trustee somehow construes this statement as "eschewing" the Court's jurisdiction. McKesson has done no such thing.

24.     Further bewildering is the Trustee's assertion that "FRBP 7012 and Local Rule 7012-1 govern the statements required of movants; arguably then, Defendants have failed to make the proper statement under the FRBP and Local Rules. See Local Rule 7012-1 (failure to so aver results in the waiver of the movant's 'right to contest the authority of the Court to enter final orders or judgments.')." (Opposition at ¶ 30). Rule 12(b), made applicable by FRBP 7012(b), states, "A responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court." McKesson has done just that. It is unclear how McKesson has "failed to make the proper statement."

25.     The Trustee further argues that McKesson has waived "any objections to the Court's jurisdiction by way of their active involvement in these cases." Again, McKesson's statement pertains to the Court's authority to enter a final order or judgment *in this adversary proceeding*, not to this Court's jurisdiction in general.

26. Moreover, the cases that the Trustee cites relate to waiver of a jury trial, and not the waiver of consent to the bankruptcy court's entry of final judgments or orders. Thus, they are not relevant here.

27. Most importantly, this issue is not properly before the Court, nor does the Court need to decide this issue in the context of McKesson's Motion. Nevertheless, at the risk of the Trustee alleging that McKesson has somehow waived this argument or failed to contest it properly, McKesson reserves all rights to brief this nuanced issue at the appropriate time.

## CONCLUSION

28. For the reasons set forth herein and in the Motion, McKesson prays that the Court grant the Motion and dismiss Counts V and VI of the Complaint.

DATED: June 25, 2024

/s/ Jason C. Powell (No. 3768)
JASON C. POWELL (NO. 3768)
THE POWELL FIRM, LLC
1813 N. Franklin Street
P.O. Box 289
Wilmington, DE 19899
Telephone: 302-650-1572
Email: jpowell@delawarefirm.com

and

JEFFREY K. GARFINKLE
(Cal. SBN. 153496) *Admitted Pro Hac Vice*
STEVEN H. WINICK
(Cal. SBN 160815) *Admitted Pro Hac Vice*
BUCHALTER, a Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: (949) 760-1121
Email: jgarfinkle@buchalter.com
        swinick@buchalter.com

*Attorneys for Defendants*
MCKESSON CORPORATION; MCKESSON SPECIALTY CARE DISTRIBUTION LLC; and MCKESSON MEDICAL-SURGICAL, INC.

BN 83285935v1