## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al.*,<br><br>    Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, *et al.*,<br><br>    Plaintiffs,<br><br>  vs.<br><br>MCKESSON CORPORATION; MCKESSON SPECIALTY CARE DISTRIBUTION LLC; and MCKESSON MEDICAL-SURGICAL, INC.,<br><br>    Defendants. | Adv. Proc. No. 24-50042 (KBO)<br><br>Related Adv. D.I.: 50, 51 |

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL SUMMARY ..............................................................................................3

    A.    General Background Facts..................................................................3

    B.    The Trustee's Claims .........................................................................4

    C.    What are the Issues of the Case?........................................................4

    D.    The Trustee's Written Discovery ......................................................4

    E.    Meet and Confer Efforts and McKesson's Discovery Proposal ............6

ARGUMENT ...............................................................................................................8

    A.    Discovery Must Be Proportional to the Needs of the Case ..................8

    B.    The Document Requests are Not Proportional to the Needs of the Case ...............8

    C.    The Interrogatories are Overbroad and Unduly Burdensome.................9

    D.    The Court should Adopt McKesson's Discovery Proposal ...................10

CONCLUSION............................................................................................................11

BN 85206608v3

Defendants McKesson Corporation, McKesson Specialty Care Distribution LLC, and McKesson Medical-Surgical, Inc. (collectively "McKesson") hereby oppose the motion to compel filed by plaintiff George L. Miller ("Trustee"), Chapter 7 Trustee for the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, "Debtors").[1]

## INTRODUCTION

1.      McKesson agrees with the Trustee that this discovery motion was unnecessary. In the meet and confer prior to the filing of the Trustee's motion, McKesson offered significant concessions and agreed to produce the key documents and information that are probative of the issues in dispute in this case. McKesson also agreed to produce the documents and information without prejudice to the Trustee seeking additional documents after they reviewed the documents. The Trustee rejected McKesson's position, and instead seeks a huge, burdensome electronic discovery production that is neither relevant to the Trustee's claims nor proportional to the needs of the case.

2.      This case is not that complicated. McKesson is one of the largest wholesale distributors of pharmaceuticals and other medical supplies in the United States and Canada. Debtors manufactured and sold generic and branded pharmaceutical goods to McKesson for resale up until the time Debtors filed for bankruptcy in February, 2023 and ceased their business operations. Shortly after the filing of bankruptcy case, the Trustee issued a national recall of virtually all of Debtors' pharmaceutical products, including those that had been sold to McKesson.

3.      As a result of the recall, McKesson incurred significant contractual losses, such as unsellable inventory (held by both McKesson and its customers), the cost to "cover" equivalent

---

[1] In accordance with Local Rule 7008-1 and Rule 7008 of the Federal Rules of Civil Procedure, McKesson states that it does not consent to entry of final orders or judgment by the Court in this Adversary Proceeding.

BN 85206608v3

substitutable products,[2] and lost profits.  McKesson's losses constitute deductions and offsets from monies owed to the Debtors.  Stated simply, McKesson does not owe Debtors for products that McKesson and its customers were unable to sell due to Debtors' recall, and McKesson is entitled to an offset in the amount of the costs it incurred as a result of the recall.

4.      The appropriate discovery needed by the Trustee is straight-forward and limited. The relevant questions are as follows: (a) what is the total amount McKesson owed to the Debtors prior to the recall?; (b) what is the amount of unsalable inventory held by McKesson at the time of the recall?; (c) what was McKesson's cost to cover the products that needed to be replaced?; (d) what was McKesson's cost to destroy the recalled products?, and (e) what additional offsets did McKesson incur due to the recall?  McKesson agreed to produce documents that detail answers to each of these questions and to provide a person responsible at McKesson who can speak to each of the subject areas. (Declaration of Steven Winick ¶ 4, Exh. A.)

5.      The primary hang-up is that the Trustee seeks all of McKesson's communications regarding Debtors' sale of products to McKesson from 2020 to the present case.  Given that the issue of the case is the amount of McKesson's inventory of recalled products and its actual costs in responding to the recall, there is little to no relevance to McKesson's communications, and the burden to produce the communications would be significant.  Accordingly, McKesson submits that the Trustee's broad discovery requests are not "proportional to the needs of the case," as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

6.      The Court should affirm McKesson's discovery proposal.  McKesson's proposal is a reasonable balanced approach to discovery.  Once the discovery is produced, Debtors will not be prejudiced from seeking additional discovery if warranted.

---

[2]  "Cover" is a legal term contained in § 2-712 of the Uniform Commercial Code.  Under this section of the Uniform Commercial Code, when a seller of goods breaches a product supply agreement, the buyer may "cover" by purchasing substitute goods to those due from the breaching seller.  UCC § 2-712(1).  In the situation where the seller of goods breaches, the "covering" buyer is entitled to recover its damages.  UCC § 2-712(2).

BN 85206608v3

## FACTUAL SUMMARY

### A.    General Background Facts

7.    Debtors were national manufacturers of branded and generic pharmaceuticals. (Complaint ¶ 11.)

8.    McKesson purchased pharmaceutical products from Debtors pursuant to written agreements (the "Agreements") and invoices. (Complaint ¶¶ 15, 19 & 20.)

9.    Debtors allege they are owed monies from McKesson for products they delivered. (Complaint ¶¶ 21 & 23.)

10.    Debtors filed voluntary petitions for Chapter 7 bankruptcy relief on February 23, 2023.  (Complaint ¶ 10.)  George L. Miller is the appointed Chapter 7 trustee.

11.    Concurrent with the bankruptcy filing, Debtors ceased all business operations. (Complaint ¶ 14.)

12.    On or about May 2, 2023, the Trustee and Debtors issued a nationwide recall of a significant number of pharmaceutical products, which Debtors announced was in connection with the bankruptcy filings and the cessation of business operations.   The FDA publicly posted the recall announcement.   A copy of the announcement can be found from the following hyperlink.   https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/update-akorn-issues-voluntary-nationwide-recall-various-human-and-animal-drug-products-within-expiry.[3]

13.    As a result of the nationwide recall, McKesson incurred significant damages. McKesson could not sell its inventory of Debtor's recalled product.  McKesson incurred costs to reimburse returns from customers as a result of the recall, it incurred costs to cover and replace recalled products that had been ordered by its customers, it incurred costs destroying the recalled products, and it lost profits as a result of the recall.

14.    McKesson filed a Proof of Claim in the Debtors' lead bankruptcy case on June

---

[3]  The Court can take judicial notice of the recall notice pursuant to Rule 201(b)(2) of the Federal Rules of Evidence because the asserted fact can be accurately and readily determined from accurate sources (the FDA's public website).

BN 85206608v3

23, 2023 based on the damages it had incurred and was continuing to incur as a result of the cessation of business and product recall. (Claim 345-1, Attachment 1 at ¶ 6.)  In that proof of claim, McKesson asserted a secured claim for its recoupment, setoff, netting, and deduction rights against any accounts payable owed to the Debtors. (Claim 345-1, Attachment 1 at ¶ 7.)

**B.      The Trustee's Claims**

15.      The Trustee has brought four contract claims against McKesson: Goods Sold and Delivered, Breach of Contract, Account Stated, and Unjust Enrichment.  It alleges that McKesson owes it for products that it previously purchased from Debtors.  There is no fraud claim or tort claim, and no claim that focuses on McKesson's intent.

16.      Notably absent from the Trustee's complaint is any mention of the recall.  It is not mentioned in the Complaint at all.

**C.      What are the Issues of the Case?**

17.      As  previously noted, this is a straight-forward legal case with clear factual issues. The relevant questions are:

(a)      What is the total amount McKesson owed to the Debtors prior to the recall?

(b)      What is the amount of unsalable inventory held by McKesson at the time of the recall?

(c)      What was McKesson's cost to cover the products that needed to be replaced?

(d)      What was McKesson's cost to destroy the recalled products?

(e)      What additional offsets did McKesson incur due to the recall?

18.      These questions can be easily answered with McKesson's financial documents, not from day-to-day correspondence.

**D.      The Trustee's Written Discovery**

19.      The Trustee has propounded overly broad document requests and interrogatories to the McKesson entities.

20.    <u>The Document Requests</u>. The Trustee's document requests are grossly overbroad and unduly burdensome. They are neither narrowed to the issues of the lawsuit nor tailored to limit undue burden to McKesson. As drafted they are unreasonable and violate the protections of FRCP 26(b)(1).

21.    For instance, the document requests, as stated, seek *all documents and electronically stored information, including all communications*, concerning:

(a)    Any products sold by Debtors to McKesson from January 1, 2020 to the Petition Date. (See requests nos. 1-2) <u>Comment</u>: This request is not limited to product sales that are at issue in this case.

(b)    Any products of Debtors sold by McKesson to any customer from January 1, 2020 to the Petition Date. (Request no. 3) <u>Comment</u>: This request would require McKesson to provide all communications with its thousands of customers.

(c)    Any of Debtors' products sold by McKesson that were subject to a recall. (Request no. 6.) <u>Comment</u>: Putting aside communications, McKesson has agreed to producing documents that detail McKesson's inventory that was subject to recall.

(d)    Any products supplied by Debtors to McKesson concerning the inability of McKesson to sell the subject products. (Request no. 12.) <u>Comment</u>: McKesson was unable to sell the products because the Trustee recalled them. There is no issue that McKesson was subject to the recall.

(e)    Any products supplied by Debtors concerning "relabeling" of such products. (Request no. 13.) <u>Comment</u>: The lawsuit does not raise "relabeling" issues.

22.    <u>The Special Interrogatories</u>. The Trustee's special interrogatories are grossly overbroad and unduly burdensome. They are not tailored to the issues of the lawsuit or to limit McKesson's burden. As drafted they are unreasonable and violate the protections of FRCP

5

26(b)(1).

23.    For instance:

(a)    The interrogatories are unreasonable as to time, going back to 2020.  (See, e.g., Irogs 3,  5, 7, 9).  <u>Comment</u>:  The lawsuit does not relate to sales going back to 2020.

(b)    The interrogatories require McKesson to detail its confidential downstream sales to its customers.  (Irog. 7)  <u>Comment</u>:  McKesson's sales to its customers are not relevant to the lawsuit.

(c)    The interrogatories ask McKesson to identify the reasons why the Trustee initiated the recall, as well as to identify the products that are subject to the recall.  (Irog. 10)  <u>Comment</u>:  These are facts only known to the Trustee.

(d)    The interrogatories ignore the existence of the recall, shifting the burden to McKesson to detail why products could not be sold or needed to be replaced.  <u>Comment</u>:  The Trustee knows what products were subject to the recall, and further that McKesson was legally barred from selling recalled products.

(e)    The interrogatories seek information at a Product level.  <u>Comment</u>:  McKesson has proposed to detail at an invoice level the amount of inventory at hand that was subject to recall.  Requiring McKesson to identify at a product level is unduly burdensome.

(f)    Interrogatory no. 17 seeks documents related to relabeling.  <u>Comment</u>:  Relabeling is not at issue in this case.

**E.    Meet and Confer Efforts and McKesson's Discovery Proposal**

24.    During the parties' meet and confer process, McKesson's counsel repeatedly asked Trustee's counsel to justify such broad requests, particularly requests for communications that would require McKesson to engage in costly electronic discovery  The Trustee's response told the story:  "We need the communications because we don't know what we don't know."

6

(Winick Decl. ¶ 3.)   In other words, a significant portion of the Trustee's discovery requests, particularly the requests for communications, is just a fishing expedition – an expedition that is not warranted by the theory of the case.

25.    McKesson's counsel explained in the meet and confer that McKesson maintained a comprehensive database that would detail the products ordered by McKesson by invoice, the shipment date, and McKesson's payments.  McKesson also explained that its database detailed the recalled inventory, and this information could be provided efficiently.  (Winick Decl. ¶ 2.)

26.    To break the meet and confer log-jam, McKesson agreed to provide a discovery proposal that would provide the Trustee with the documents and information necessary to detail the key issues in the case.  Pursuant to the proposal, McKesson agreed to produce the following documents:

(a)    Documents that itemize at an invoice level the products McKesson purchased from Debtors that remain unpaid.

(b)    Documents that itemize McKesson's inventory of products that were subject to Debtors' recall.

(c)    Documents that itemize the products that customers returned to McKesson or which McKesson credited to customers or third parties related to the recall.

(d)    Documents that detail McKesson's destruction costs.

(e)    Documents that detail McKesson's cover costs.

(f)    Documents that detail all other setoffs.

In addition, McKesson agreed to identify a person responsible from McKesson who could speak to each of the subject areas (a) – (f).  McKesson also agreed that this proposal was without prejudice to the Trustee seeking additional documents following the production, if required. (Winick Decl., ¶ 4, Exh. A.)

27.    The Trustee's counsel rejected this proposal and instead has demanded discovery far beyond that which is warranted by the theory of the case.

BN 85206608v3

## ARGUMENT

**A.    Discovery Must Be Proportional to the Needs of the Case**

28.    Rule 26(b)(1) of the Federal Rules of Civil Procedure provide strict limits on discovery.    The requested discovery must be relevant to the party's claim or defense and proportional to the needs of the case.    The importance of the discovery in resolving the issues and the burden or expense of the proposed discovery compared to its benefit are relevant factors in determining whether discovery is proper.

**B.    The Document Requests are Not Proportional to the Needs of the Case**

29.    The Trustee's document requests go far beyond the relevant issues of the case, are not reasonably tailored to resolving the issues of the case, and the costs of the requested discovery far outweigh any benefit that could be derived from the production.

30.    As described more fully in paragraph 21, supra, the requests are problematic. Consider the following:

(a)    The document requests seek documents and communications related to any product sold by Debtors to McKesson from January 1, 2020 to the Petition Date.    Significantly, the request is not limited to product sales that are at issue in the case.    To give some context to the magnitude of the amount of products sold by Debtors to McKesson, for just the seven month period from February 3, 2022 to August 31, 2022 (a small subset of the 3 plus years sought for by the document request), there were 79,446 separate transactions between Debtors and McKesson corresponding to $270 million in sales.    (Gottschall Decl., ¶ 2.)

(b)    The document requests would require McKesson to produce all of its internal and external communications regarding Debtor.    As explained in the declaration of Michael Gottschall, the expense and burden of searching for communications would be significant.    (See Gottschall Decl., ¶ 3.) And the burden will increase exponentially if McKesson is required to

8

expand custodians. ·

(c)    The document requests would require McKesson to produce communications with all of its thousands of customers that concern products sold Debtors from January 1, 2020 to the Petition Date.  (Request no. 3)  This would be a huge burden, well beyond the analysis conducted by Mr. Gottschall.

31.    Overall, the Trustee's discovery is a blunt weapon not proportional to the needs of the case and not focused on the issues of the case.

## C.    The Interrogatories are Overbroad and Unduly Burdensome.

32.    The Trustee's interrogatories likewise go far beyond the relevant issues of the case and are not reasonably tailored to resolving the issues of the case.

33.    As described more fully in paragraph 23, supra, the requests are problematic. Consider the following:

(a)    The interrogatories are unreasonable as to time, going back to 2020.  (See, e.g., Irogs 3, 5, 7, 9).  These interrogatories are not tied to the claims in the case.

(b)    The interrogatories would require McKesson to detail its confidential downstream sales to its customers.  (Irog. 7)  McKesson's sales to its customers are not relevant to the lawsuit.

(c)    The interrogatories as a whole seek information at a product level. McKesson has proposed to detail the key information in dispute at an invoice level, including the amount of unpaid invoices and the inventory on hand that was subject to recall.

34.    Overall, McKesson is agreeable to addressing the relevant issues of the case, and McKesson will do this by providing McKesson's data from which answers can be extracted or compiled.

**D.**    **The Court should Adopt McKesson's Discovery Proposal**

35.    McKesson's discovery proposal is reasonable and directed to the issues of the case.  McKesson's proposal does not prevent the Trustee from follow-up discovery (formal or informal).  Should McKesson's response leave open questions to relevant questions, this certainly would warrant additional discovery.

36.    McKesson submits that e-discovery of custodian emails is not warranted in this case, and Trustee has offered no reason for McKesson to incur this costly and timely burden.  "We don't know what we don't know" is not a justification for discovery, let alone burdensome discovery.

## CONCLUSION

For the foregoing reasons, McKesson respectfully requests the Court deny the Trustee's motion to compel.

DATED:  October 17, 2024

By:/s/Jason C. Powell (No. 3768)
JASON C. POWELL (NO. 3768)
THE POWELL FIRM, LLC
1813 N. Franklin St.
P.O. Box 289
Wilmington, DE 19899
Telephone: 302-650-1572
Email: jpowell@delawarefirm.com

and

JEFFREY K. GARFINKLE
(Cal. SBN:  153496; *Pro Hac Vice* pending)
STEVEN H. WINICK
(Cal. SBA:  160815; *Pro Hac Vice* pending)
BUCHALTER, a Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: 949-760-1121
Email:  jgarfinkle@buchalter.com
        swinick@buchalter.com

*Attorneys for Defendants*
MCKESSON CORPORATION; MCKESSON
SPECIALTY CARE DISTRIBUTION LLC; and
MCKESSON MEDICAL-SURGICAL, INC.