# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>MCKESSON CORPORATION, MCKESSON SPECIALTY CARE DISTRIBUTION LLC, MCKESSON MEDICAL-SURGICAL, INC.,<br><br>Defendants. | Adv. Proc. No. 24-50042 (KBO)<br><br>**Related Adv. D.I.:** 50, 51, 52, 53, 54 |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF AN ORDER (I) COMPELLING DEFENDANTS TO RESPOND TO INTERROGATORIES AND TO PRODUCE DOCUMENTS, AND (II) GRANTING RELATED RELIEF**

Plaintiff George Miller, Chapter 7 Trustee (the "**Trustee**") for the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "**Debtors**"), by and through his counsel, hereby files this reply ("**Reply**") in further support of *Plaintiff's Motion for Entry of an Order (I) Compelling Defendants to Respond to Interrogatories and to Produce Documents, and (II) Granting Related Relief* [Adv. D.I. 50] (the "**Motion**"), and in reply to the *Memorandum of Law in Opposition to Plaintiff's Motion to Compel*

---

[1] The Debtors in these Chapter 7 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Akorn Holding Company LLC (9190); Akorn Intermediate Company LLC (6123) and Akorn Operating Company LLC (6184). The Debtors' headquarters was located at 5605 CenterPoint Court, Gurnee, Illinois 60031.

[Adv. D.I. 52] ("**Opposition**") and the supporting declarations [Adv. D.I. 53-54] filed by defendants McKesson Corporation ("**McKesson**"), McKesson Specialty Care Distribution LLC ("**MSCD**"), and McKesson Medical-Surgical, Inc. ("**MMS**" and together with McKesson and MSCD, "**Defendants**").[2]

By way of this Reply, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Defendants' Opposition is a work of sleight-of-hand. While it initially appears reasonable, the Opposition actually proposes that rather than comply with their discovery obligations, Defendants simply provide summaries of certain collections of documents and that the Trustee should never be able to review or analyze the underlying documents themselves. But that is wholly unacceptable, as the Trustee requires sufficient competent evidentiary matter to analyze all claimed defenses.

2. Defendants simply brush aside entire categories of requested documents, including those pertaining to relabeling costs and to products sold to and accepted by Defendants in 2020 and later years but not affected by the recall upon which Defendants rely, apparently forgetting that this adversary proceeding involves unpaid invoices dating back to 2020 and that Defendants have asserted setoff rights via their proof of claim that allegedly include relabeling costs. So, too, Defendants wholly ignore the Interrogatories, apparently hoping the Court will as well.

3. Most important, while the Opposition presents a façade of cooperation and asserts that the Trustee failed to respond to Defendants' proposal to resolve the issues raised by the Motion, the fact is this is demonstrably false. Defendants failed to respond to the Trustee's

---

[2] All capitalized terms not defined herein have the same meanings as in the Motion.

proposal, as shown by an email exchange that Defendants deceptively truncated in the exhibit to one of the declarations accompanying their Opposition.

4. Despite Defendants' misleading characterization of one of the parties' discussions regarding discovery, the Trustee is not seeking to conduct a "fishing expedition." Rather, the Trustee is attempting to obtain information and documentation that are relevant to the claims and defenses asserted in this adversary proceeding or likely to lead to the discovery of admissible evidence, but he has been stymied in those efforts by Defendants' desire to rewrite the Rules, to control the flow of information and documentation, and to unilaterally determine what the Trustee may and may not receive. While it is true that the Trustee does not know all of the information and documentation that Defendants have in their possession, custody, or control, that fact does not shield Defendants from complying with their discovery obligations and producing that which the Trustee rightfully seeks.

5. The Opposition unfortunately continues Defendants' pattern of delay, gamesmanship, and misrepresentation, which now dates back more than a year. Having rejected the Trustee's good-faith efforts to obtain even a baseline set of documents, and having left the Trustee with no alternative but to seek the Court's assistance, Defendants must be compelled to produce the discovery that the Trustee seeks and to which the Trustee is entitled. And given Defendants' ongoing efforts to avoid their discovery obligations, the Trustee should be awarded attorneys' fees incurred in connection with this dispute.

## ARGUMENT

6. "Because the standard for discovery is broad, 'discovery is ordinarily allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.'" *In re Anderson News, LLC*, 615 B.R. 45, 50 (Bankr. D.

Del. 2020) *quoting In re NewStarcom Holdings, Inc.*, 514 B.R. 394, 399–400 (Bankr. D. Del. 2014) (citations and quotations omitted) (compelling production of information on transactions with customers and underlying credit memos instead of summaries suggested by the producing party).

7.       In the Opposition, Defendants accurately identify the key issues at play in this adversary proceeding.  *See* Opposition ¶ 4.  In short, this dispute boils down to three issues: (1) what do Defendants owe the Debtors; (2) what applicable costs or charges did Defendants incur; and (3) can the costs or charges be applied to reduce the amount owed to the Debtors?  The Trustee is entitled to receive information and documentation in response to the Interrogatories and the Requests for Production that help answer these questions.  But Defendants do not get to dictate what information and documentation the Trustee receives, and they do not get to rely upon the fact that they have a large number of employees and facilities such that complying with their discovery obligations may be expensive or time-consuming given that the Rules contain no exemptions for large companies.

**A.   The Trustee Has Sought to Streamline Discovery, and It Is Defendants That Are Responsible for the Delay**

8.       The Opposition and the supporting declarations seek to portray Defendants as good-faith actors that are interested in collaborating on discovery but that are hamstrung by the fact that there may be a large number of responsive documents in their possession, custody, or control, as a result of which the normal rules of discovery should be suspended.  In fact, Defendants have not produced any of the documents they already agreed to produce in response to the Requests for Production, have not responded substantively to a single one of the Interrogatories, and have attempted to deceive the Court about which side is to blame for the delay and the present dispute.

4

9. The discovery in this adversary proceeding pertains to two general categories: product information (sales, invoices, orders, and returns) and communications (email and other correspondence).

10. As set forth in the Motion, the Trustee's counsel and Defendants' counsel engaged in a lengthy email exchange and in discussions regarding both categories of documents between August 20, 2024 and September 16, 2024.  *See* Motion at ¶ 32; *see also Declaration of Steven C. Reingold in Support of Reply in Support of Plaintiff's Motion for Entry of an Order (I) Compelling Defendants to Respond to Interrogatories and to Produce Documents, and (II) Granting Related Relief* ("**Reply Decl.**") filed contemporaneously herewith.

11. At the end of a drawn-out meet-and-confer process, it was agreed that Defendants would advise the Trustee of those documents that Defendants could readily produce that pertain to the amounts the Trustee contends are due and owing in respect of the invoices sent to Defendants, and those documents that Defendants could readily produce that pertain to the amounts that Defendants contend relate to their right of setoff arising from the recall of certain products, all being subject to the Trustee's right to seek additional documents.  Reply Decl. ¶ 2.

12. The Trustee also requested that Defendants produce Defendants' internal communications that relate to the amounts owed and to the setoff amounts; to that end, the Trustee asked Defendants to provide a list of custodians who do or may have such communications, along with a list of proposed search terms to be applied to their communications, so as to limit the number of documents to be produced.  Given the passage of time, the Trustee asked Defendants to respond with their proposal during the early part of the week of September 9, 2024.  Reply Decl. ¶ 2.

13.  On Friday, September 13, 2024, Defendants provided their proposal as to what documents they would be willing to produce in response to the Requests for Production; they also

indicated that they would identify for a deposition an individual who can speak to the subject matter of those documents. Defendants have not, however, supplemented any of the Interrogatory Responses or any of the Requests for Production Responses, nor have they produced a single document to the Trustee. Reply Decl. ¶ 3.

14. On Monday, September 16, 2024, the Trustee asked that Defendants provide the additional information that the Trustee requested so that Defendants' internal communications can be produced. Attached to the Reply Declaration as **Exhibit A** is a copy of this email exchange, ending with the September 16, 2024 email to Defendants, which was the last email in the exchange as Defendants did not reply. Reply Decl. ¶ 4. Notably, Defendants failed to include the Trustee's email in their submissions. The reason Defendants did so is obvious—that email undercuts Defendants' attempt to portray themselves as cooperative and the Trustee as uncooperative.

15. To date, Defendants have failed to respond, in writing or orally, to the Trustee's September 16, 2024 email. Reply Decl. ¶ 5.

16. To date, Defendants have failed to produce any of the documents they agreed to produce in their September 13, 2024 email. Reply Decl. ¶ 6.

17. To date, Defendants have never provided the Trustee with a list of custodians or a list of proposed search terms. Reply Decl. ¶ 7.

18. The *Declaration of Steven Winick* [Adv. D.I. 53] accompanying the Opposition asserts that "Counsel for the Trustee rejected [the September 13, 2024] proposal, including e-discovery of McKesson's communications." *See* Winick Decl. ¶ 5.

19. As shown by the Reply Declaration and Exhibit A thereto, this is simply false: the Trustee's counsel accepted the proposal as a start, subject to the ability to request that Defendants produce additional documents. Moreover, there is nothing in the September 13, 2024 email

6

regarding "e-discovery of McKesson's communications," a fact that is easily verified. And asking Defendants to provide the requested information to determine what communications would also be produced was in no way a rejection of Defendants' proposal, and Defendants can point to nothing the Trustee wrote or did that constitutes a rejection.

20. Indeed, Defendants failed to carry out the accepted portion of the proposal, and now falsely represent to the Court that the proposal was rejected.

21. Compounding the misrepresentation, the *Declaration of Michael Gottschall* [Adv. D.I. 54] accompanying the Opposition asserts that Defendants "understand that Akorn has not agreed to limit the custodians to the nine identified." Gottschall Decl. ¶ 3.

22. This statement is pure fabrication: Defendants did not provide the Trustee with a proposed list of nine custodians, *see* Reply Decl. ¶ 7, and the Opposition does not identify or attach any email in which they allegedly did so. The reason for this failure is simple—because there is no such email. Similarly, the Opposition does not include any information as to any discussion that the Trustee and Defendants had regarding any such list. Again, the reason is simple—because there was no such discussion. The Trustee is at a loss to understand why Defendants "understand that Akorn has not agreed to limit the custodians to the nine identified" and respectfully submits that the Court and the Trustee are entitled to know why.

23. Now, via the Opposition, Defendants allege that the Trustee is responsible for the breakdown in communications. This too is false, as demonstrated by the fact that Defendants include only a select portion of the relevant email exchange, omitting the final email that clearly shows Defendants are in the wrong, and by the facts that Defendants never made a proposal regarding Defendants' communications and never responded to the Trustee's September 16, 2024 email.

7

24. In light of the foregoing, in light of Defendants' continuing failure to correct any of the deficiencies in the Interrogatory Responses or any of the deficiencies in the Requests for Production Responses, in light of Defendants' continuing failure to provide any information or produce any documents whatsoever, and in light of the filing of the Opposition in which Defendants intentionally seek to mislead this Court, the Trustee respectfully requests that the Court grant the Motion and compel Defendants to comply with their discovery obligations under Rule 33 and Rule 34. In addition, because the Trustee was forced to file the Motion as a result of Defendants' dilatory and obfuscatory conduct, which conduct has unfortunately continued, the Trustee respectfully requests that the Court grant the Trustee additional relief in the form of reasonable attorneys' fees pursuant to Rule 37(a)(5)(A).

**B.    Defendants Already Promised to Provide the Information Sought in Their Proofs of Claim**

25. Defendants filed proofs of claim in each Debtor's case alleging certain claims that may be asserted as setoffs against the Trustee's claims in this adversary proceeding. *See* Case No. 23-10253-KBO Claim Register, Claim No. 345; Case No. 23-10254-KBO Claim Register, Claim No. 199; Case No. 23-10255-KBO Claim Register, Claim No. 374 (the "**Proofs of Claim**"). Upon information and belief, these claims are essentially substantially duplicative of one another and Defendants have failed to identify the actual Debtor for which a credit should be applied

26. Defendants already represented that they will produce the same documents they now refuse to give to the Trustee. Specifically, the Proofs of Claim state that "The invoices, Agreements, and other documents substantiating the Claims (the "Supporting Documents") are both confidential and voluminous … Any party in interest may request the Agreements and the Supporting Documents upon written request …" Proofs of Claim Supplement ¶ 8.

27. There is no reason why documents that Defendants proposed to provide to *any party in interest* should now be withheld from the opposing party during active litigation. Defendants' only purpose in withholding these documents is improper: to delay and impede the Trustee while dragging out this litigation and causing the Debtors' estates to incur increasing fees and costs.

28. To the extent the Opposition suggests that Defendants believe the Debtors already possess the relevant documents, this suggestion is false and irrelevant. While the Trustee has reviewed some documents, the Trustee does not have substantiating documents for all of Defendants' claimed setoffs, nor does the Trustee have any communications discussing, for example, the invoices that Defendants do not contest but have not paid. In any event, the Trustee is entitled to the non-privileged documents in Defendants' possession, custody, or control that are responsive to the Requests for Production, and to fulsome responses to the Interrogatories.

C.     **The Trustee is Entitled to Documents from 2020**

29. The Trustee seeks to collect outstanding receivables due as far back as January 7, 2020. In the Opposition, Defendants suggest that documents covering the time period of unpaid invoices are irrelevant or their production would be unduly burdensome. This turns logic on its head: unless Defendants admit the Trustee has an unquestionable right to collect on these older invoices, the Trustee may seek documents related to that time period in order to support his claims and to assess the strength of Defendants' alleged defenses based on, for example, pre-petition refunds or chargebacks.

30. Unless Defendants waive any argument based on alleged refunds or chargebacks, the Trustee's discovery requests cannot be challenged for being overly broad or for seeking information and documentation that is neither relevant nor likely to lead to the discovery of admissible evidence. Requests for documents and information from 2020 forward go directly to

the amount of the Trustee's claim and Defendants' defenses thereto, based on the theories alleged by Defendants themselves.

**D.     The Trustee is Entitled to Assess Whether Defendants Did or Did Not Sell a Product**

31.     Defendants allege that they should not be required to produce any proof of whether any products they received from the Debtors and accepted were sold to Defendants' customers or any correspondence related thereto.

32.     One of Defendants' key arguments is that they are not liable to pay for products that could not be sold to customers because of the recall, and have a right of setoff for any other charges, returns, or costs incurred on account of the recall.

33.     These charges – if valid under the governing agreements – are a core area of dispute between the parties, and the Trustee must be able to assess the viability of Defendants' asserted defenses and setoffs.

34.     Correspondence between Defendants' customers and Defendants, and internal correspondence of Defendants, are vital to assess the reason for a return, refund, or chargeback and its practical impact on the claims in this case.  For example, if Defendants were not able to sell a product, that may negate a claim for account stated.  If the product was sold and then returned by a customer pursuant to the recall, that return may generate a cost that has a different status than costs resulting from unsold product – possibly a post-petition unsecured claim that cannot be setoff against the Trustee's affirmative claims.  If a product was sold and returned for a reason unrelated to the recall, that return may generate a claim with a different status for setoff purposes.

35.     Defendants propose to give some of this information on an invoice-by-invoice basis.  This is insufficient.  It is vital that the Trustee receive actual product and sales information for specific items sold to and accepted by Defendants, not a summary proposed by Defendants;

the sales outcome for a specific product, and the timing that product was sold to Defendants by the Debtors, has an impact on the categorization of claims arising from an alleged return.

**E.    The Trustee is Entitled to Relabeling Documents**

36.    The supplement to the Proofs of Claim alleged that setoffs include "any claims resulting from relabeling of the inventory."  *See* Proofs of Claim Supplement ¶ 6(d).

37.    Defendants' Opposition, asserting that relabeling is not at issue so they will not produce documents, is curious.  *See* Opposition ¶ 23(f) ("Relabeling is not at issue in this case"). Have Defendants forgotten one of their claimed arguments, or do they believe they can simply surprise the Trustee with unsubstantiated relabeling claims while refusing to provide supporting documentation?  Unless Defendants now waive one of their asserted defenses, they must be required to produce supporting documents.

**F.    The Burden is Proportionate to the Needs of This Adversary Proceeding**

38.    Defendants generally allege that the information and documentation requested are not proportionate to the needs of this matter, so they should not be compelled to produce them.  As discussed above, the specific, granular information that the Trustee seeks is necessary to assess the defenses asserted.

39.    While the issues in this adversary proceeding are in some sense limited, the dollar amount in dispute is sizeable: the Trustee's complaint seeks in excess of $104 million from Defendants.  Defendants have informally provided certain summary calculations – unsupported by the kind of documents that would demonstrate their validity – asserting in excess of $60 million in claimed setoffs across several categories of claims (such as pre-petition refunds, post-petition returns, cover costs, and destruction costs).[3]

---

[3]    Notably, Defendants have made no effort to pay the undisputed amount to the Debtors' estate.

11

40.     Because of the meaningful dollar value of each category of claimed setoffs, it is entirely appropriate for Defendants to be required to substantiate them with documentation that the Trustee may assess. The mere fact that the information is voluminous must be balanced against the needs of the case. Defendants cannot continue to assert without evidence – as they have thus far – that tens of millions of dollars in setoffs are available to them.

41.     Further, as Defendants represent in their Opposition, much of the detailed information already exists in Defendants' systems. That is, Defendants need not compile such information in a time-consuming manner; rather, they merely need to produce it in a format the Trustee can access. The burden on the Defendants to produce this material is not substantial compared with the dollar value of the claims impacted by the information sought.

42.     At bottom, the scheduling order setting forth discovery timing has been in place more than four months. Defendants' delay has now frittered away half of that time, and the Trustee still has not a single produced document or communication to show for it. The Trustee respectfully submits that it is beyond time for the Court to put an end to any further delay so that the estate can benefit from this matter's prompt resolution.

## **CONCLUSION**

43.     For all of the foregoing reasons, the Trustee respectfully requests that the Court enter an order (a) granting the Motion in its entirety, (b) compelling Defendants to respond substantively to the Interrogatories, (c) compelling Defendants to produce documents (including electronically stored information) in response to the Requests for Production, (d) requiring Defendants to pay the Trustee's reasonable attorneys' fees and costs incurred in making this Motion, and (e) granting to the Trustee such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  October 24, 2024 | **SAUL EWING LLP** |
| | |
| | <u>*/s/ Evan T. Miller*</u> |
| | Evan T. Miller (DE Bar No. 5364) |
| | Paige N. Topper (DE Bar No. 6470) |
| | 1201 N. Market Street, Suite 2300 |
| | P.O. Box 1266 |
| | Wilmington, DE 19899 |
| | Telephone:  (302) 421-6800 |
| | evan.miller@saul.com |
| | paige.topper@saul.com |
| | |
| | and |
| | |
| | Michelle G. Novick (*admitted pro hac vice*) |
| | 161 North Clark Street, Suite 4200 |
| | Chicago, IL 60601 |
| | Telephone: (312) 876-7899 |
| | michelle.novick@saul.com |
| | |
| | and |
| | |
| | Steven C. Reingold *(admitted pro hac vice)* |
| | 131 Dartmouth Street, Suite 501 |
| | Boston, MA 02116 |
| | Telephone:  (617) 723-3300 |
| | steven.reingold@saul.com |
| | |
| | *Special Counsel to the Chapter 7 Trustee* |